UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AVERY PARKER,

    Petitioner,

v.

S. L. BURT,

    Respondent.

Case No. 2:14-cv-14532
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING
AMENDED PETITION FOR WRIT OF HABEAS CORPUS [23]**

In 2011, a Michigan jury convicted Avery Parker of, among other crimes, first-degree criminal sexual conduct. Parker is currently serving a lengthy sentence and asks this Court to issue him a writ of habeas corpus. Because five of Parker's six claims are not exhausted and not exhaustible, and because Parker's sixth claim lacks merit, the Court will deny Parker's petition.

**I.**

**A.**

In May 2011, Parker, his sister-in-law, and an acquaintance met at a bar. *People v. Parker*, No. 308224, 2013 WL 1689278, at *1 (Mich. Ct. App. Apr. 18, 2013). After drinks, Parker's sister-in-law went home and went to sleep. *Id.* Parker eventually went there too, as he was living with his brother and sister-in-law at the time. *Id.*

From there the accounts diverge. Parker's sister-in-law testified that Parker was drunk and verbally and sexually assaulted her. *Id.* After Parker threatened to kill her, she "was able to run out the door, through the woods, and to a neighbor's house where she received assistance." *Id.* Parker, on the other hand, testified that his sister-in-law "tried to have sex with him." *Id.*

According to Parker, he "pushed her away, and the victim fell into a heat spacer [*sic*], a box, and a dresser." *Id.* Parker said he then left the home, but his sister-in-law followed. *Id.*

A jury convicted Parker of, among other crimes, first-degree criminal sexual conduct. *Parker*, 2013 WL 1689278, at *1. Parker, who was sentenced as a fourth-habitual offender, received 20 to 40 years in prison for that conviction. *Id.*

**B.**

Parker appealed, raising numerous claims of error. The Michigan Court of Appeals affirmed Parker's conviction. *See Parker*, 2013 WL 1689278, at *1.

Parker then sought leave to appeal from the Michigan Supreme Court. In November 2013, the state high court denied leave "because [it was] not persuaded that the questions presented should be reviewed." *People v. Parker*, 839 N.W.2d 210, 210 (Mich. 2013).

**C.**

About a year later, in November 2014, Parker turned to the federal courts for relief. Parker's petition for a writ of habeas corpus was assigned to now-retired Judge Gerald E. Rosen for resolution.

In June 2015, the Warden moved to dismiss Parker's petition. The Warden pointed out that contrary to Rule 2(c) of the Rules Governing § 2254 Proceedings, Parker's petition was not signed. (PageID.157.) The Warden also argued that Parker's petition contained "numerous, un-numbered claims" that "were not raised in the state courts." (PageID.158.)

The next month, Judge Rosen issued an order staying this case. Apparently relying on the Warden's characterization of Parker's claims (the Warden had identified 10 claims in Parker's letter-style petition), Judge Rosen found that "[t]he only claim [in his petition] that [Parker] appeared to raise on his appeal of right before the Michigan Court of Appeals was a portion of

his claim involving the failure to obtain discovery." (PageID.765.) Although dismissing the mixed petition was an option, Judge Rosen was concerned that by the time Parker filed a second habeas corpus petition (asserting the exhausted claims), the one-year period for seeking federal habeas corpus relief would run out. (PageID.766–67.) Thus, instead of dismissal, Judge Rosen stayed the case and held Parker's petition in abeyance so that Parker could exhaust the asserted claims.

But Judge Rosen did so conditionally. As relevant here, Judge Rosen said, "The stay is . . . conditioned on petitioner's return to this Court with an amended petition, using the same caption and case number, *within 30 days of exhausting state remedies*." (PageID.769 (emphasis added).) And, perhaps referring to the fact that Parker had filed an unsigned petition that did not delineate the grounds for relief, Judge Rosen provided that the "amended petition shall conform to the requirements of Rules 2(c) and (d) of the Rules Governing Habeas Petitions." (PageID.769.) He warned: "Should petitioner fail to comply with these conditions, his case may be subject to dismissal." (PageID.769.)

### D.

Parker then attempted to exhaust.

In October 2015, Parker filed a motion for relief from judgment in the state trial court. (PageID.1049.) In January 2016, the state trial court denied the motion. (PageID.1086.)

Parker then tried to appeal as of right, but the Michigan Court of Appeals dismissed the appeal for lack of jurisdiction. (PageID.1087.) The court stated that there was no right to appeal a denial of a motion for relief from judgment. (PageID.1087.)

Parker (with some additional procedural guidance from the Michigan Court of Appeals (*see* PageID.1191)) then sought permission to appeal. In November 2016, the Michigan Court of

Appeals denied Parker's delayed application for leave to appeal because Parker had "failed to establish that the trial court erred in denying his motion for relief from judgment." (PageID.1193.)

Parker then waited to seek leave to appeal to the Michigan Supreme Court. He did not file an application for leave to appeal until June 2017—more than six months after the Michigan Court of Appeals had denied leave. (*See* PageID.781.) As this was well beyond the 56 days that the Michigan Supreme Court permits criminal defendants to seek leave to appeal, the Michigan Supreme Court rejected and returned Parker's filings. (*See* PageID.781, 1236.)

**E.**

Although the Michigan Supreme Court rejected Parker's application for leave to appeal on June 23, 2017 (PageID.1192, 1236), Parker did not seek to restart this federal habeas corpus case until mid-August 2017, apparently August 16, 2017 (*see* PageID.733, 778, 780). As Judge Rosen had retired by that time, Parker's case was reassigned to the undersigned.

In response to Parker's request to reopen the case, this Court noted that it "appear[ed]" that Parker had exhausted claims in state court and reopened the case. (PageID.940.) (This remark was based on the fact that Parker had returned to federal court following the state-court proceedings; it was not a legal determination that Parker had properly exhausted his claims.) Because Parker had not complied with Judge Rosen's requirement of filing an amended habeas corpus petition that complied with Rules 2(c) and 2(d), this Court provided, "Parker has until December 6, 2017 to file an amended habeas corpus petition that complies with Judge Rosen's prior order. If Parker fails to do so, the Court will proceed to decide Parker's claims based on what is now before the Court." (PageID.941.)

Parker has filed a signed, amended petition using a form that is consistent with Rules 2(c) and 2(d). (*See* R. 23.)

And the Warden has responded. The Warden makes several arguments for denying or dismissing Parker's amended petition, including that Parker "failed to properly exhaust his state court remedies" and "failed to return to this Court within 30 days of learning that he had failed to properly exhaust his state court remedies." (*See* PageID.980; *see also* PageID.975, 978.)

## II.

### A.

The Court agrees with the Warden that Parker did not satisfy all conditions of his stay. Judge Rosen specifically stated that the stay was "conditioned on petitioner's return to this Court with an amended petition, using the same caption and case number, *within 30 days of exhausting state remedies*." (PageID.769 (emphasis added).) Even assuming that the 30-day clock started when Parker received the rejection letter from the Michigan Supreme Court, that would have been sometime around June 30, 2017 (the Michigan Supreme Court rejected Parker's filings on June 23, but it would have taken some time for mailing). So Parker should have returned to this Court by July 30, 2017. Yet he did not do so until August 16, 2017—a good two weeks late. Moreover, when Parker sought to reopen this case he did not, as Judge Rosen contemplated, file a signed petition in compliance with Rules 2(c) and 2(d). So it would arguably be fair to dismiss this case because Parker did not comply with Judge Rosen's order.

But Judge Rosen said "may": "Should petitioner fail to comply with these conditions, his case may be subject to dismissal." (PageID.769.) May is not must. And Parker eventually filed a signed petition and made a good-faith effort to comply with Rules 2(c) and 2(d). Further, he returned to this Court around 45 days after he received the Michigan Supreme Court's rejection

5

of his request for leave—a period of time that is consistent with the purpose, if not the letter, of Judge Rosen's stay condition. And, in reopening the case, this Court directed Parker to file an amended petition. So all things considered, the Court declines to dismiss Parker's petition for not complying with Judge Rosen's order.

**B.**

But that is not to say that this Court will address the merits of all of Parker's claims. To the contrary, five claims are defaulted and there is no basis to excuse the default.

In his amended petition, Parker asserts (1) that his right to a speedy trial was violated; (2) that his counsel was constitutionally ineffective by waiving his speedy trial rights; (3) that the prosecution withheld Dr. Douglas Slater's report; (4) that the prosecution referred to his prior bad acts during trial (while he was barred from doing the same to the prosecution's witnesses); (5) that he was unable to recall witnesses (in particular a nurse); and (6) that his counsel was constitutionally ineffective by not recalling (or not objecting to the prohibition on recalling) witnesses.

Of these six claims, Parker raised only one on direct appeal: that the prosecution withheld Dr. Slater's report. (*See* PageID.532–34.) That means the other five claims would be exhausted only if Parker exhausted them via his motion for relief from judgment.

But he did not. After the Michigan Court of Appeals denied Parker leave to appeal the denial of his motion for relief from judgment, Parker had only 56 days, until January 11, 2017, to seek leave to appeal from the Michigan Supreme Court. Mich. Ct. R. 7.305(C)(2). It appears that Parker did not seek leave from the Michigan Supreme Court until mid-June 2017—five months after the 56-day period expired. (*See* PageID.781, 852–853, 1236.) As Parker did not properly present the claims in his motion for relief from judgment to the Michigan Supreme Court, he did

not exhaust any claims in that motion. *See Wagner v. Smith*, 581 F.3d 410, 414–15 (6th Cir. 2009).

So (at least) five of the six claims in Parker's habeas corpus petition are unexhausted and the question becomes whether Parker can now exhaust them. He cannot. Parker has already filed one motion for relief from judgment and with only two limited exceptions, "one and only one motion for relief from judgment may be filed with regard to a conviction." Mich. Ct. R. 6.502(G)(1). The two exceptions: the second motion for relief from judgment is "based on a retroactive change in law that occurred after the first motion for relief from judgment" or the second motion is based on "a claim of new evidence that was not discovered before the first such motion." Mich. Ct. R. 6.502(G)(2). Parker's five unexhausted claims fit neither exception. The nature of the claims indicates that they are based on facts that Parker was aware of at the time of trial, or, at least, by the time he filed his motion for relief from judgment four years later. And none of the claims appear to be based on any new law, let alone new law that applies retroactively. So five out of the six claims in Parker's amended petition are procedurally defaulted. *See Bousley v. United States*, 523 U.S. 614, 622 (1998).

And Parker has not demonstrated "cause for the default and prejudice resulting therefrom, or that failing to review [his] claim[s] would result in a fundamental miscarriage of justice." *Williams v. Anderson*, 460 F.3d 789, 805–06 (6th Cir. 2006). While it might be possible to blame appellate counsel for not raising the five unexhausted claims on direct appeal, Parker could have exhausted those claims by raising them in his motion for relief from judgment, timely seeking leave from the Michigan Court of Appeals, and timely seeking leave from the Michigan Supreme Court. This Parker did not do. And he cannot blame counsel for that.

Parker, however, attempts to blame the state trial court. In some parts of his filings, Parker asserts that he needed unspecified "paperwork" to appeal to the Supreme Court and that the state trial court did not provide him with that paperwork on time. (PageID.959.) For instance, he says, he "tried the [Michigan] Supreme Court was denied because I never got paperwork to file[] like [the federal court] order" stated. (PageID.959.) Similarly, "I was late filing with the [Michigan] Supreme Court. I did the best I could with no help. It was ordered [by Judge Rosen] to give me all the paper to speed this up and did not." (PageID.958.)

These and like statements do not establish cause to excuse Parker's failure to exhaust. As an initial matter, Judge Rosen did not order that the state trial court provide Parker with anything. Instead, Judge Rosen "impose[d] upon petitioner time limits within which he must proceed with his state court post-conviction proceedings" to "ensure that there [were] no delays by petitioner in exhausting his state court remedies." (PageID.767–78.) And Parker's reference to "paperwork" appears to refer to Judge Rosen's order to the clerk of the *federal* court to make certain forms available so that Parker could properly format his *federal* petition. (PageID.1172, 1178.)

Moreover, a review of the Rule 5 materials suggests that Parker only faced challenges in perfecting his request for leave from the Michigan Court of Appeals—not from the Michigan Supreme Court. For instance, Parker told the Michigan Court of Appeals, "I am sending this back to you. I did this the best I could and hope it works[.] I do not have time[.] The lower court should have sent me all the paper work to start this and did not. It stated it in [the] document from the [U.S.] District Court." (PageID.1092; *see also* PageID.780, 852–853, 1190–1191, 1195.) As for the Michigan Supreme Court, Parker (at least at some points in his filings)

8

indicates that the issue was that no one told him had only 56 days to seek leave. (*See* PageID.780, 781, 959, 1239.)

But even ignoring all of that, and assuming both that the state trial court delayed in providing Parker unspecified paperwork and that the delayed paperwork was needed to seek leave from the Michigan Supreme Court, Parker has not explained how the trial court's delay pushed him past the 56-day deadline. And given that Parker did not seek leave until five months after the 56-day deadline, it appears that Parker missed the deadline not because of the trial court's actions but because he was unaware of the deadline. Accordingly, on this record, Parker has not demonstrated cause.

Because Parker has not established cause to excuse his default, this Court cannot address the merits of the five defaulted claims unless failing to do so "would result in a fundamental miscarriage of justice." *Williams*, 460 F.3d at 805–06. But to establish a fundamental miscarriage of justice, Parker must "present new reliable evidence showing that he is actually innocent," *Dufresne v. Palmer*, 876 F.3d 248, 256 (6th Cir. 2017), i.e., evidence that was not presented at trial and that would have resulted in "no reasonable juror" voting to convict, *see Schlup v. Delo*, 513 U.S. 298, 324, 329 (1995).

Parker has not pointed to any such evidence. The Court acknowledges that post-trial, the victim sent Parker a letter which stated, "I will never understand [wh]y you threw your life away in a single blow to my head!" (PageID.1182; *see also* PageID.1180–1189). Although very unclear, Parker might be asserting that this statement is inconsistent with statements or evidence at trial that he beat the victim in the head and face. (*See e.g.*, PageID.1073.) But if that is Parker's claim, the Court does not find the victim's emotional and cursory reference to a "single blow" to so undermine the evidence at trial that not one reasonable juror would convict Parker.

Parker also says that after he was convicted, the victim was arrested for lying to the police. (*See* PageID.1216; *see also* PageID.1090, 1100.) But it appears that the lie was not related to Parker's assault but instead the victim's attempts to hide her daughter's boyfriend from the police. (*See* PageID.1216.) So even if the victim lied to police, that lie would not discredit her testimony about Parker's assault to the point where no reasonable juror could believe it.

In sum then, Parker did not exhaust at least five claims in his amended habeas corpus petition. He cannot now exhaust those claims so they are defaulted. And he cannot excuse that default because he has not shown cause for his failure to exhaust or that he is actually innocent.

## C.

So the only claim that the Court will address on the merits is Parker's claim that the "prosecutor withheld Dr. Slater's report." (PageID.955.) (Arguably, this claim is also unexhausted as the Michigan Court of Appeals found the argument too underdeveloped to address. *See People v. Parker*, No. 308224, 2013 WL 1689278, at *7 (Mich. Ct. App. Apr. 18, 2013).)

Parker's claim based on the delayed-production of Dr. Slater's report does not warrant habeas corpus relief because the delayed-production did not violate Parker's constitutional rights or, if it somehow did, it did not result in substantial prejudice. A review of the trial transcript reflects that the prosecution did not learn of Dr. Slater's report until the day Dr. Slater testified. (PageID.422.) When Parker's counsel objected that the prosecution had not produced the report in a timely manner, the trial court permitted Parker's counsel time to review the report before continuing his cross examination of Dr. Slater. (PageID.423.) In fact, the trial court said to Parker's counsel: "I'm giving you the . . . opportunity to take as much time as you need to review [the report] so that you can have an effective cross-examination of Dr. Slater." (PageID.423.)

The trial was then in recess for seven minutes before Parker's counsel resumed his cross examination. (PageID.423.) Given that Parker's counsel was able to review the report before completing his cross examination and that Parker has not shown that his counsel's cross examination was less effective due to an inability to review the report earlier, the Court finds that there was no constitutional violation or, if there was, that the violation did not prejudice Parker to the point of warranting habeas corpus relief.

## III.

For the reasons given, the Court DENIES Parker's amended petition for a writ of habeas corpus.

SO ORDERED.

                                      s/Laurie J. Michelson
                                      LAURIE J. MICHELSON
Dated: July 10, 2018            U.S. DISTRICT JUDGE

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 10, 2018.

                                      s/Keisha Jackson
                                      Case Manager